All right, our next case for this morning is actually two cases, United States v. Robert Malone and Donta Henderson. And you are representing, Mr. Lahti? I am, Your Honor. I may please the court. Good morning. My name is Damon Lahti. I am representing by appointment, Donta Henderson, and we will have a separate argument on behalf of Mr. Malone in this consolidated case. I am pleased to represent Mr. Henderson in his appeal of his conspiracy conviction. He was also convicted for distribution of methamphetamine, but we are here to appeal only his conspiracy conviction. And that is because a rational jury could, based on the evidence presented in this case, have found that he was solely a buyer or seller as opposed to a conspirator. Here's what worries me about that idea. The word deliverer, aside from other things you'd say about it, evokes to me anyway, and I think evoked to the district court judge, somebody on the same team as the seller. And that's a classic conspiracy. That's not buyer-seller. If side A is trying to sell the drugs and side B is trying to buy them, it doesn't matter if there are two or three or four people all on side A. So I think the district judge, this is my first problem, was correct to say, you know, deliverer isn't something that belongs in the buyer-seller instruction. My second problem is that there's kind of a confusing exchange at the end of this discussion at the trial level, but I never see a clean request from Mr. Henderson, please, in that event, just give the pattern instruction on buyer-seller. Those words never come out of anybody's mouth. So it seems to me the district judge was probably correct to say, I'm not putting this word deliverer into it, and isn't really ever properly asked to do more. Your Honor, I'm entirely with the court on the first instances. I've given this more thought and some deep thought and study of the case law. I see that the deliverer could actually become ambiguous. On one hand, it could mean merely the same thing as a seller, someone who has distributed or sold drugs. On the other hand, as the government has argued, and as I think Your Honor is pointing out, it could be made to suggest that there was some sort of agreement behind that sale or act of deliverance. And so I'm here today to argue solely for the pattern instruction, and I want to make that clear to the court. And I appreciate Your Honor's point. That leads us then to the second part of Your Honor's question, which is, was there a clear request for the pattern instruction? I realize that there may have been this discussion with Judge Magnus Stenson that they got caught up on this question of deliverer. However, I see trial counsel arguing that, look, Your Honor, if the instruction, however it is given, I think is how he phrases it, even if it's given as a pattern instruction, if that is not given from my client, Mr. Henderson, when it is going to be given for a co-defendant, Justin Swain, and was in fact given from Mr. Swain, there's going to be prejudice to my client. And I find that to be fairly compelling. So it's an appendix. I'm just looking at the opening brief for Mr. Henderson. Appendix 7, right at the top of that page. Counsel is saying, I think if this instruction, however it ends up, goes in front of this jury with, for example, Justin Swain's name in there, not my client, it does impact our right to present a defense. And then the judge interrupts. But there's never that final request. He's sort of saying there's going to be a problem if you don't. And then the judge sentenced him off in a different direction. The judge says the defense is he's not really a member of the conspiracy. Not the defense is buyer-seller more narrowly. It's not he's part of the conspiracy. And then Mr. Edgar says that's essentially correct. So how does she know she's making a mistake not to give the pattern buyer-seller? I realize there's a nuance there. But the mistake I think with respect to the district court is this. The evidence is essentially in equipoise. There is conflicting, equivocal, inconsistent, sometimes frankly confusing evidence as to whether Mr. Henderson is part of this conspiracy or is in fact just a buyer-seller. And I think trial counsel ensured a foothold here to say, look, Your Honor, however this instruction is given, there's going to be great prejudice to my client. And that prejudice is terribly troubling to me. I don't get that argument at all. The evidence may differ with respect to two defendants. If all you argue to a district judge is that every defendant should get identical instructions, that seems to say, dear judge, please disregard the evidence. Why should a judge go along with that? That is not my point, Your Honor. My point is strictly on prejudice. No, but the point that was made to the district judge was it will prejudice my client if you don't give the same instruction with respect to him as with respect to Slane, even if the evidence is different. And it's easy to understand why a judge would not go along with that. I think the distinction, Your Honor, is the genesis of trial counsel's comment here was the recognition that the evidence was inequitable. Not just that we're comparing two defendants. That's different from saying it's identical with respect to two defendants. I agree with Your Honor. I don't see trial counsel making that point. Was there an argument made to the district judge that Slane and Henderson were identically situated with respect to the buyer-seller question? I don't recall any such argument in the record. I will note that it is of interest to me that one witness actually included Justin Slane within the circle, as they called it, or the conspiracy. Nonetheless, he got the instruction. Is that Swain or Swain? Swain. So I thought actually your big point, yes, we have these colloquies, is that there was a fair amount of evidence to suggest that Henderson was not part of the group, the Weldon group, or whatever you want to call them. Although we do have this one sale, hey, I can't sell something to you, go to Henderson. And then I guess we have the other, is it in a couple of months, with Chevakis, Swain, right? So it's hard without a clear request. I mean, I guess I'm pushing in my own mind over toward plain error. And if it's plain error, I don't think you can get there. I see. I do believe that there's an option here, of course, of de novo or plain error review. But even under plain error review, I think that there's a concern about the problematic nature of this proceeding. Gee, for instance, found that there was sufficient evidence of conspiracy, but still found under plain error that a buyer-seller instruction should have been given. Your Honor, to your point, as it concerns the evidence with respect to Mr. Henderson, I look back at the indictment. And the two cheap overt acts that are charged in the indictment are, first, the possession of drugs allegedly at the Church Street address, which the jury reached at impasse. And so the government voluntarily dismissed it. The second overt act in the indictment is, of course, this controlled buy-sell with Mr. James Western. And I found it of interest in looking at the Lomax case, which also was a case where evidence stood in equipoise, that there was a similar arrangement with a gentleman by the name of Anthony in the Lomax case. Where someone had come to Brandon, I think is the other co-defendant's name in Lomax, and Brandon said, no, no, go buy your drugs from Anthony. He can sell them to you. And in that case, that still wasn't evidence under Lomax for resisting a buyer-seller instruction. We have the same situation here, if the government's evidence is to be believed, where Julius Weldon, apparently one of the ringleaders to this conspiracy, refers James Western to buy the drugs from Donata Henderson. If the evidence in Lomax justify a buyer-seller instruction, even with that fact against Anthony, I think it likewise directs the court to a similar result here. I recognize Lomax is a de novo review, not plain error. But the prejudice to me here is still manifest, particularly since, again, Justice Swain received this instruction. It's essentially a message to the jury that with respect to Justice Swain, you may consider him, or at least evaluate whether he's a buyer-seller or a conspirator. But with respect to Donata Henderson, you're not allowed that. He's either a conspirator or he's not. And I find that terribly prejudicial in this type of proceeding. Can I ask you, Mr. Lichty, the reason I asked about Swing with a G at the end is because it seems to me that if a buyer-seller instruction would have been possibly appropriate with respect to Mr. Henderson, it would have been with respect to Swing's testimony that he sold drugs a number of times to Mr. Henderson over about a two-month period, varying sometimes on credit, sometimes not. And to me, that's the kind of ambiguous situation in which the buyer-seller instruction probably is needed if it's requested. So I guess I'll just invite comment about that perspective on the evidence. I don't disagree with your honor that it would be required with respect to Chewbacca Swing's testimony. I also think it is perfectly appropriate with respect to the James Western controlled buy. Because that testimony was essentially equivocal and inconsistent as well. But that has Henderson on the side of – that's the buyer-deliverer problem, right? Where you've got somebody who's working with others on the same side of the transaction. And that's a non-starter. I'm not arguing the deliverer instruction, your honor. I'm only arguing buyer-seller. And with respect to that controlled buy, the James Western purchase from Donta Henderson, again, the evidence is believed. I think that's a classic buyer-seller situation. There's no evidence in this record whatsoever that I have seen that links Julius Weldon, the supposed ringleader who coordinated this sale, to Donta Henderson. And in fact, I find it interesting that James Western noted that he didn't even know Donta Henderson. Okay. I think you need to – I see my time is running. Yes. Thank you. Thank you. Mr. Carlson? May it please the court, my name is Kent Carlson and I was court appointed to represent Robert Malone in this appeal. The purpose of this appeal is to try and convince this honorable court that the 264-month sentence imposed on Robert Malone, and for that matter, any sentence above the mandatory minimum 240-month sentence, which Judge Magnus Stinson described as such a significant sentence, is greater than necessary. In making this argument, I am aware that I face an uphill battle. The presumption of reasonableness is a very difficult standard to tackle, and in an attempt to do so, I'm going to talk at this point about one of the arguments that I raised in a briefing that had to do with the criminal history of Mr. Malone. After Judge Magnus Stinson reviewed the pre-sentence report and became ready to do the sentencing in this case, she indicated that she believed that a mandatory minimum sentence was enough in her words, in other words, sufficient but not greater than necessary. Something changed her mind. She said that it was the government's argument that Mr. Malone was on probation for a methamphetamine possession conviction at the time he committed the instant offense. Well, at first, that sounds proper and reasonable, but when one considers that Judge Magnus Stinson already knew that and had already said that she believed that a sentence of the mandatory minimum was enough, she then goes on to consider the government's argument further. And that's what she says. I mean, she says, well, initially it sounded reasonable. I was originally drawn to your argument, but now I'm looking at it in light of everything, and I think a bit more than the 240 is called for. The problem I have with that judge is she had already, by reviewing the pre-sentence report and accepting the pre-sentence report, relied on the fact that he was convicted and on probation three times. First of all, in giving him two criminal history points for the offense. Secondly, and most importantly, for giving him two criminal history points for being on probation at the time he committed the instant offense. And then to shift away from the guidelines issue a little bit, relying on that very conviction to increase the mandatory minimum under 851 from 10 to 20 years. But there's nothing that prohibits that, is there? I mean, we've encountered this before, and it's still a below-guideline sentence. There is no question it is a below-guideline sentence. I mean, the guidelines may be crazy when it comes to methamphetamine, but she didn't think so, and she's not required to think so. No, but I think what happens is, having relied and reviewed the pre-sentence report, she knew all of these things already. And now, again, for a fourth time, she then says, oh yeah, that's what changes my mind to say that 240 isn't a sufficient sentence anymore. It has to be more than that. So if you're not arguing, I mean, if it's really just a holistic process, she's telling you what is influencing her, this particular factor, and it doesn't matter that it's been used before. If you're making an argument to us that there's somehow some rule of law that we need to follow when we assess substantive reasonableness, like you can only rely two times on the same fact or something, it's a new one on me, but I would be interested to know how you would articulate it. I am not saying that there is any rule of law that says that. I think when one looks at what you're trying to arrive at as a sentence that is not greater than necessary, yet provides just punishment for the offense, relying on the same fact or four times just doesn't accomplish that. The court has nothing else. OK. Thank you very much. We do not. Mr. Reitz. May it please the court. Brian Reitz for the United States. I would like to begin with Mr. Henderson's argument. While we appreciate that Mr. Henderson has appeared to abandon his non-starter of the buyer-deliverer instruction, that non-starter is the only thing he presented to the district court. He said multiple times that he was requesting the deliverer. The judge gave him an opportunity to clarify, and he said he was a deliverer. He never made an argument that would go to buyer-seller. He never said that the evidence was an equipoise. He never pointed to evidence that he was only a buyer-seller. In fact, everything he said went to deliverer. He said he was a deliverer, a pass-through. He said right away, the judge on transcript 1030, the judge asked, are you arguing for a buyer-seller, or as you put it, a deliverer? And he says, deliverer, judge, since there is no money sale there. He continues on page 1032. And Chief Judge Wood, as you referenced at the end, the judge asked him to clarify what his defense is, and he says that is essentially correct. When she says it's not enough to put, right, this is the top of 1035. The top of 1035. And so the closest you can get is that sentence that just precedes it, where he seems to be trying to say, maybe not in all cases for all defendants, but he seems to be trying to say my client should get the same instruction, buyer instruction, they're talking about buyer instructions, as Justin Swain. And I find it pretty elliptical, too. But he does tiptoe up to it. I think tiptoe is actually even generous. I think what he was saying, and I think how the judge read it, and the people in the court, and how the government read it, is more akin to what Judge Easterbrook was saying, is that each defendant deserves the same instructions. Otherwise, it will prejudice one of the other ones. I think that's what he said. And in fact, the court gave him an attempt to clarify that he didn't- Well, then she says, what defense? And then she says, are you really just trying to say he's outside the scope of the conspiracy? And he says, essentially, yes. And he says, yes. So even if that tiptoeing up to it was true, he then backs away from that to carry on with that metaphor. He says, no, I'm saying I wasn't in the conspiracy. And he argues that, in closing argument, is that what he says? Yeah. His argument, basically, was that he was not within the conspiracy. OK. So he follows up on that theory of his. Right. And I think that continues into his opening brief here. He says that one drug deal isn't enough to get him into the conspiracy. So I think that was his defense and why he wanted the instruction that he requested the entire time. The buyer-seller instruction request, we consider that new. It first came about in his opening brief. And after our brief and the reply brief, Mr. Henderson switched all in to that. But it was never until the appellate briefing that he made arguments that would go to buyer-seller. He never said anything about the evidence being an equipoise. And he never has pointed to any evidence that would indicate that he was only a buyer-seller, considering that he was on the same side of the transaction with Mr. Weldon. I'd say the best he's done is – or what he's mostly hung his hat on – is that some of the conspirators didn't know him. Well, he has a lot of evidence to show – I mean, I would think a rational jury could have found that he wasn't in the scope of the conspiracy, but probably a rational jury. If that's the only issue, if it's not this buyer-seller stuff, the question is could a rational jury find he's in? And I think that's why his defense was that. I don't think we necessarily have to quibble with that. I mean, nobody's heard of him, right? Even the police officer – I mean, there's a lot of evidence to show that he's at best on the periphery. Yeah, I did want to address that, considering that seems to be one of Mr. Henderson's main arguments why he deserved the buyer-seller, which is incongruous, I think, really, to the point he's trying to make with the instruction. But he hangs his hat on the fact that there were seven cooperators, and only two of them identified it. Our brief response, and more the general, that that's not necessary. I think I missed an opportunity to respond a little more specifically there. So looking at those seven cooperators more granularly, two of them did identify Mr. Henderson. That's Swang and Western. Three of those cooperators were arrested before Mr. Henderson entered the conspiracy. I mean, I don't think there's been any doubt that Mr. Henderson was a latecomer to the conspiracy. He started dealing in the last two months. So Troy Pickle, Michael Merritt, and Stephanie McCarter were all arrested before that. So of course they wouldn't know Mr. Henderson. So that leaves two, Andre Bankhead and Cherise Portis, who were both involved in a different component of the conspiracy. They were the people that either in Las Vegas or helped Weldon transport the drugs from Las Vegas to Indianapolis. So there were, I mean, I suppose it's a possibility that they would have known Mr. Henderson, but there's really no reason to suspect they would have since Mr. Henderson was in Vincennes. But the two people that overlapped somewhat and that were in Vincennes, Swang and Western, did know Mr. Henderson. And they both said at trial that he was a member of the conspiracy. Is there any other evidence that Weldon had a practice of turning to Henderson when he was not in a position to deliver drugs? Because that could have been just a one-off, just like the example I think of, which is probably telling you that summer is coming. In Paris, they closed the boulangerie and there's a little sign saying, if you want to buy a baguette, go down the street to our competitor, our usual competitor. But they're open during August and we aren't. And I wonder if Weldon, this is a one-off, he wants to keep the customer, be nice. He's not conspiring, but he's just saying, I can't make the sale today. Yes, so sorry, let me find the transcript site. So on page, transcript page 449, I believe that's correct. Western testified that Henderson courier was one of Weldon's couriers, which I think certainly implies more than just a one-off. But outside of that testimony, no, I think it's fair to say that it's that testimony. That being said, I don't think there's any requirement under this court's precedence for general conspiracy law that there be more than one. Well, he has to know that there's an agreement. He has to join it, right? Right, and I think that is the only possible inference from whenever Western contacted Weldon for drugs and he gave Henderson a telephone number. Go to Henderson instead, I overslept. And then Western went to do the drug deal with Henderson. And Western, this is on page transcript 544, Western said, I gave the money to Henderson that I owed Weldon. So Western took that as Henderson doing a drug deal for Weldon, which means he was a deliverer, passed through, as Mr. Henderson said initially, which means he was not entitled to a buyer-seller instruction. If the court has no further questions. Could you address the G case, which seems to find plain error in not giving a buyer-seller instruction when one was not requested? So in G, I forget the exact specifics, but the district court found that the evidence of conspiracy was weak and then didn't give the instruction. So I think that kind of conflicts with what at least implicitly conflicts with what this court has said, that you don't have to give, that a judge doesn't have to give the buyer-seller instruction when the evidence of conspiracy is strong. But that's, G said, kind of the opposite, that if the court finds that the evidence of conspiracy is weak, then it should give the buyer-seller instruction. But there was no finding here and really, I would say, no request to find it based on. I have to say, it's a surprising holding at least from my perspective to say that I've got to give, the district judge has to give a defense, an instruction on a theory of a defense that nobody wants to pursue. Yes, I suppose I should have answered it that way. Not only is G distinguishable, but the government would not agree with G. We don't think that, and I would find it odd for the defense bar, maybe perhaps too, some defense might not want this instruction. So I don't think the rule should be that district court judges have to give an instruction that no one requests. So the government would stand in disagreement with G to the extent it stands with that proposition. Even that being said, it's distinguishable on this case because of the strong evidence. With respect to Malone, what was the overall quantity of, we're talking about methamphetamine, right? Yeah, it was, I don't have it exactly off the top of my head. He was found responsible for over 100 grams, I think. Grams? I thought it was 175 kilos. Yeah, kilos, yes, kilos, I'm sorry. That's an extraordinary amount. Yes. In and out of Vincennes? In Vincennes, which is of course a small town. From our understanding, this was the main methamphetamine dealer in to Vincennes, Indiana, which is a small town in this area of Indiana that's been really overrun by methamphetamine. So I think that factor alone would have supported a guideline sentence, much less a below-guideline sentence. I think Mr. Malone recognized the high burden he has, and if the court doesn't have further questions on that, we would just say this isn't the first case or the one and only case this court should ever find a below-guideline sentence to be unreasonable. This court has never found one to be so, and I don't think this is the extreme facts that would warrant finding that. So if the court has no further questions, we would ask it to affirm. All right, thank you. How are we on rebuttal? I think you ran out, but I'll give you a minute, Mr. Lefty. Your Honor, I believe I'm on seconds. You are. Let me be brief on rebuttal. Actually, you're negative, but that's all right. Just two brief points, Your Honor. First, this court has established the factors under which conspiracies are evaluated vis-a-vis buyer-seller. There is none of that traditional evidence that you would see. There's no evidence of sales on consignment. There's no evidence of an agreement to look for other customers. There's no evidence of a payment on commission on sales. No indication that the parties had agreed to further distribution or the manner in which that would happen. We do have credit sales with Swing. There is, but it's an unknown number. We don't know the number of that, and, you know, the credit sales under Cruz and Cohen really don't require a finding of conspiracy or at least prohibit a buyer-seller obstruction. In fact, one was encouraged in those cases, so I don't think that's dispositive to the question. And so with that said, I think the evidence of conspiracy was demonstrably weak. We would ask for vacating of the conspiracy conviction and remand for either new trial or resentment. Okay. Thank you. Thank you, Your Honor. Mr. Carlson, anything further? No, Your Honor. All right. Thank you very much, and thank you, Mr. Carlson, for accepting the appointment from the court. We appreciate your efforts very much. Thanks as well to the government. We'll take the case under advisement.